UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SUNLIANG CHEN,<br>Petitioner,<br>v.<br>JAMES JANECKA,<br>Respondent. | Case No. 5:26-cv-05445-DTB<br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On September 17, 2026, petitioner Sunliang Chen ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"). (Docket No. 1). Petitioner claims that his right to due process under the Fifth Amendment was violated when he was arrested following the expiration of his visa, thereby implicating his liberty interest. (Id. at 10-14).

On September 25, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4), Respondent filed an Answer to the Petition ("Answer") (Docket No. 7), accompanied by one exhibit (Docket No. 7-1). In the Answer,

Respondent alleges that the Petition does not allege an adequate basis to justify an order compelling release from detention. (Docket No. 1). Respondent further alleges that Petitioner is unlawfully in the United States, having remained in the Country following the expiration of his visa, and that his immigration proceedings remain pending. (Id. at 2). Finally, Respondent alleges that Petitioner was not previously released from Immigration and Customs Enforcement ("ICE") custody on an order of supervision, and that he otherwise has no due process right to a pre-detention hearing, or for his immediate release from detention. (Id.). Nothwithstanding Respondent's objection to Petitioner's request to be released from custody, Respondent acknowledges that Petitioner appears to be eligible to receive an initial bond hearing pursuant to Rodriguez Vasquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026). (Id.).

Petitioner did not file a Reply.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court finds that habeas relief is not warranted, and therefore denies the Petition.

## II.

## BACKGROUND[1]

Petitioner entered the United States on January 30, 2026, pursuant to a B-2 Visa, with an admit-until date of July 29, 2026. (Docket No. 1 at 2, 4). Although Petitioner's passport contains a B-1/B-2 Visa issued in Shanghai on April 8, 2019, expiring on April 2, 2029, the visa's expiration date in his passport is not the expiration of his authorized stay in the United States. (Docket No. 1 at 4, 22). Following the expiration of his authorized stay, Petitioner's wife filed for asylum, and U.S. Citizenship and Immigration Services issued a Form I-797C receipt dated August 13, 2026, for Petitioner's wife's Form I-589 application for asylum and for

[1] The Background is drawn primarily from the Petition.

withholding of removal ("Application") (Docket No. 1 at 4, 24). The Form I-797C Notice of Action records receipt of the Application on July 30, 2026, and lists both Petitioner and his wife as applicants. (Id.). Petitioner is included in his wife's asylum application as a derivative spouse. (Id.). The receipt identifies a mailing address at 3006 Parkway Circle, El Monte, California 91732. (Id.). The receipt also explains that the principal applicant and included spouse or children will be notified to attend biometrics collection, and that failure to appear can affect the Application. (Id.). The Application reflects that Petitioner's wife filed for asylum the day after Petitioner's B-2 Visa expired. (Id. at 4). Petitioner relies on his admitted entry, the government's acceptance and processing of the Application, and his compliance with the biometrics appointment as facts supporting his liberty interest and the practicability of prior process. (Id. at 4-5). He does not claim that filing for asylum extended his B-2 status or independently immunized him from detention. (Id.).

On or about September 9, 2026, Petitioner and his wife attended an asylum biometrics appointment at a fingerprinting facility. (Id. at 5). Immigration and Customs Enforcement ("ICE") apprehended Petitioner at the facility and took him into immigration custody. (Id.). He is presently confined at Adelanto. (Id.). Petitioner's wife attended the same appointment but was not detained. (Id.). Petitioner's voluntary appearance and his wife's continued liberty are relevant to the need for an individualized explanation of why his confinement was necessary. (Id.). On information and belief, Petitioner received neither advance notice of an intention to detain him nor an opportunity to contest that detention before a neutral decision maker. (Id.). The supplied records do not include a Form 1-200 arrest warrant, Form 1-213, Form 1-286 custody determination, Notice to Appear, or contemporaneous arrest report. (Id.). The supplied materials identify no conviction or other ground requiring mandatory detention under 8 U.S.C. § 1226(c). (Id.). Petitioner argues that Respondent should identify and support any asserted exception to section

1226(a), including any mandatory-detention ground. (Id. at 5-6). At the time the Petition was filed, Petitioner's next master calendar hearing was scheduled to be in person on September 22, 2026, at 1:00 p.m., before Immigration Judge Patrick D. Barrett at the Adelanto Immigration Court, 10250 Rancho Road, Suite 201A, Adelanto, California 92301. (Id. at 6). No final removal order has a been identified in the information supplied. (Id.). Petitioner has not sought an ordinary custody redetermination under 8 C.F.R. §§ 10 1003.19 and 1236.1(d). (Id.). There is no bond order or administrative bond appeal to challenge. (Id.). The September master-calendar setting concerns removal proceedings; custody proceedings are separate. (Id.). Petitioner's constitutional claim arose when the Government took his liberty at the biometrics appointment. (Id.). He remains confined as a result of that arrest and seeks relief from the present consequences of the asserted initial violation. (Id.).

## III.

## PETITIONER'S CLAIMS

The Petition alleges that Petitioner's detention without prior process violated his Fifth Amendment right; and that his detention must comply with federal statutory limits. (Docket No. 1 at 4-15).

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475,484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the

legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289,301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 224l(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention

violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Mathews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## V.

## DISCUSSION

Petitioner argues that his detention violates procedural due process and asks for release, or in the alternative, a bond hearing. (Docket No. 1 at 12-13, 16). He alleges that he did not receive pre-detention notice of hearing to determine whether he posed a flight risk or dang to the community, and that detention is not warranted in his case. (Id. at 9-12).

As to Petitioner's procedural due process claim, courts in this Circuit have found that noncitizens who have previously been detained by immigration officials and released on conditions have a liberty interest in maintaining that liberty. See, e.g., Zarief Kamel v. Santacruz, No. 5:26-cv-03481- BFM, 2026 WL 1965112, at *2 (C.D. Cal. July 2, 2026) (quoting Morrissey v. Brewer, 408 U.S. 471,482 (1972)). Those decisions rely on the premise that release from custody on parole is an

"implicit promise" that parole "will be revoked only if [the individual] fails to live up to the parole conditions." Id. Not only is there a heightened liberty interest in maintaining parole once granted, but such individuals have already been found not to be a danger or flight risk, yielding a heightened risk of an erroneous deprivation of liberty. Id. at *3-4.

Here, Petitioner was not previously detained and released on conditions. An individual who has overstayed his nonimmigrant visa does not necessarily have a conditional liberty interest protected by the Due Process Clause such as the petitioner in Kamel. See, e.g., Melkumyan v. Semaia, No. 5:26-cv-03019-MBK, 2026 WL 1772761, at *2 .D. Cal. June 16, 2026) ( denying procedural due process claim of individual who overstayed his visa); Herrera v. Blanche, No. C26-1684-MLP, 2026 WL 1733493, at * 2 (W.D. Wash. June 16, 026) (same); Jemna v. Warden of Otay Mesa Det. Ctr., No. 3:26-cv-00725-RB - ET, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) (finding that, with respect to individual admitted on a B-2 visa, "[a]lthough Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens were previously detained and released pursuant to conditional release or parole.").

Petitioner points to decisions finding a conditional liberty interest where the government's conduct, over time, gave rise to an inference that it has decided that an asylum applicant is not a flight risk or danger to the community. See Docket No. 1 at 10, citing to Mei Yao v. Janecka, Case No. 5:26-cv-04735-DTB, [2026 WL 2666861] (C.D. Cal., Sept. 10, 2026); Medvezhov v. Warden, Case No. 2:26-cv-05918-KES-SAB, 2026 WL 2234501 (E.D. Cal., Aug. 3, 2026); Gagik T v. Chestnut, No. l:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) (finding the government's course of conduct over six years, including not locating an individual when her visa expired, and twice extending her employment authorization during the pendency of her asylum application "reflected a sustained

decision to permit [petitioner's] liberty"). The Court is not persuaded that Petitioner falls within this limited category, as the instant facts are distinguishable. The Petition reflects that Petitioner entered the United States in January 2026, and was thereafter named as a derivative spouse in the Application filed by his wife on the day after his visa expired on July 29, 2026. (Docket No. 1 at 4-5). Petitioner was arrested and detained approximately five weeks later. (Id. at 5).

In both Yao and Medvezhov, the government had implicitly consented to the petitioners' liberty for a period of years while their respective asylum applications were pending, thereby creating a cognizable liberty interest. Here, in contrast, Petitioner was arrested approximately five weeks after the Application (see Docket No. 1 at 2, 4), which had been filed the day following the expiration of Petitioner's visa. On these facts, the Court does not find that habeas relief is warranted.

The risk of an erroneous deprivation of liberty in a case such as this is not as great as it is in the case of an individual who was already found not to pose a flight risk or danger to the community, either explicitly or implicitly. See, e.g., Jemna, 2026 WL 788172, at * 5. And, while Petitioner undoubtedly has a liberty interest in avoiding detention, Section 1226(a) entitles him to a broad range of process in connection with his detention: Arrest with an administrative warrant (unless an exception to the warrant requirement applies), a prompt custody decision roughly contemporaneous to his detention, the right to seek a custody redetermination before an immigration judge, and to appeal the Immigration Judge's decision if necessary. See 8 U.S.C. § 1226(a), (c), 8 C.F.R. § 1003.19(a)-(c); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal,

and the right to seek a new hearing when circumstances materially change."). Petitioner has not alleged that he was deprived of those procedures. Indeed, Petitioner alleges that he has not sought a custody determination hearing before an Immigration Judge. (Docket No. 1 at 6). On these facts, Petitioner has not shown that such process is insufficient to ensure that he is detained only if his detention would fulfill the purposes of civil detention.

Moreover, Petitioner has been detained for less than a month. While any period of custody is difficult, such a period is not unusually prolonged for civil detention purposes. Cf. United States v. Torres, 995 F.3d 695 at 709-10 (21 months of pretrial detention for person charged with criminal offense was "approaching the limits of what due process can tolerate"); Doe v. Becerra, 732 F. Supp. 3d 1071, 1083 (N.D. Cal. 2024) (finding 30 months of immigration detention to weigh in favor of finding a substantive due process violation). Nor has Petitioner pointed to conditions worse than those in criminal custody, such as would give rise to an inference that the detention is punitive. Doe, 732 F. Supp. 3d at 1089 ("Determining whether the conditions at [an immigration detention facility] are worse 'as a whole' than at the state facilities where Mr. Doe was imprisoned is a difficult comparison that would require comprehensive evidence.").

A bond hearing is the primary test of whether detention is excessive to the government's interest in detention. See Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023). As noted, Petitioner has not requested a custody redetermination by the Immigration Judge on the instant record. On these facts, the Court is disinclined to grant a constitutional claim where the statutory process has not yet proved inadequate.

/ / /

/ / /

/ / /

## VI.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered denying the Petition and dismissing this action without prejudice.

DATED: October 8, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE